UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES H. HAMILTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-2083 (CEJ) |
| ) | |
| LARRY DENNEY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This matter is before the Court on the petition of James H. Hamilton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.   Procedural Background

Petitioner James H. Hamilton is presently incarcerated at the Potosi Correctional Center pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis.  On October 20, 2006, a jury found petitioner guilty of forcible rape in violation of § 566.030, Mo.Rev.Stat., forcible sodomy in violation of § 566.060, and kidnapping, in violation of § 565.110.  The trial court sentenced petitioner as a prior offender to two concurrent terms of imprisonment of 20 years and one consecutive term of 5 years. On January 23, 2007, the Missouri Court of Appeals affirmed petitioner's convictions and sentences.  State v. Hamilton, 212 S.W.3d 171 (Mo. Ct. App. 2007).

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied.  On June 15, 2010, the Missouri Court of Appeals summarily affirmed the denial of post-conviction relief. Hamilton v. State, 313 S.W.3d 707 (Mo. Ct. App. 2010).  On November 1, 2010, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

II.    **Factual Background**

Vickey Cross testified that, on March 29, 2002, at about 1:00 in the morning, she received a phone call from petitioner, whom she described as an acquaintance. Petitioner said that he wanted to talk to her about "some problems" he was having. She told him that she had the flu and didn't feel well. He responded that he was coming to her house. (Resp. Ex. A at 194-95). When he arrived, she went outside and sat in his car with him. She asked what he wanted to talk about and he responded that he was uncomfortable sitting there and wanted to drive around the block. When she protested that she felt unwell, he said he would bring her right back. Instead, he drove to his house. Ms. Cross testified that petitioner told her he had to get something from inside and that he would be right back. She waited in the car. He returned and asked her to come inside for a few minutes. She assented. Id. at 196.

Petitioner told Ms. Cross that they were going to be there "a few minutes" and put on a movie for her to watch. Id. at 197. She fell asleep and woke up about 7:00 in the morning in petitioner's bed under the covers. He was asleep on top of the covers. She tried to wake him up but he told her to leave him alone. She went to the front door, but it was padlocked shut. When she was unable to find a telephone, she woke him up again. He got up and went into the bathroom. She put on her coat and waited. When petitioner emerged from the bathroom, she started walking to the front door. He grabbed her and said, "first you got to give me some of that." Id. at 199. She thought he was joking and said, "Haven't you heard, no means no." Id. She started for the door again and he grabbed her by the hair. When she rushed for the door, petitioner turned on some music at high volume and threatened her, saying he could kill her and no one would know. Id. at 200.

Petitioner grabbed Ms. Cross by the neck and told her to undress. When she balked, he asked her if she wanted him to kill her. She took off her pants and he removed her underwear before throwing her onto the bed. He hit her on the chest and told her to stop crying. When she continued to cry, he covered her mouth and nose with his hand. He penetrated her vagina with his penis and her anus with his fingers. Id. at 203. When he was finished, he gave her a washcloth and rubbing alcohol and told her to clean herself. Id. at 204. She pretended to comply and got dressed.

Petitioner got dressed and told Ms. Cross he would take her home. When he opened the door, Ms. Cross ran away. She saw people sitting on a front porch and asked them for help. She called her mother who came and took her home and then called the police. Id. at 205-06.

Detective Mark Kennedy, with the St. Louis Metropolitan Police Department, interviewed Ms. Cross at her home. Id. at 265-66. He describer her as curled up in a fetal position on her bed, crying and struggling to compose herself. Detective Kennedy conducted a lengthy interview before taking Ms. Cross to the hospital for treatment and completion of a rape kit. The DNA found in swabs taken during the examination were consistent with DNA from petitioner. Id. at 262. Detective Kennedy observed abrasions or redness on Ms. Cross's neck and a small bruise on her chest.

Detective Kennedy interviewed petitioner at the police station and told him that Ms. Cross had accused him of rape. Id. at 268. Detective Kennedy testified that petitioner initially denied knowing Ms. Cross. Id. Detective Kennedy then read petitioner the Miranda warnings and petitioner signed a form indicating that he understood his rights and voluntarily waived them. Id. at 270-71. Immediately after waiving his rights, petitioner told Detective Kennedy "Vickey Cross [is] a whore and a

crackhead and . . . no one would believe anything she had to say." Petitioner told Detective Kennedy that Ms. Cross was a prostitute and that he had first picked her up about two weeks before the assault. Petitioner told Detective Kennedy that he took Ms. Cross to his apartment on four occasions and she provided sex in exchange for drugs. On March 29th, petitioner stated, he called Ms. Cross and she agreed to meet him. When he arrived to pick her up, she said she didn't feel well but agreed to go to his apartment with him. Once there, he smoked cocaine. She complained of chills and undressed and got in the bed and said she would have to "give him a rain check." Petitioner understood her to mean that she was not going to have sex with him. He told Detective Kennedy that he was not interested in sex with her at the time. Id. at 272-73. Detective Kennedy suggested that, since petitioner had not had sex with Ms. Cross, he should provide a DNA sample to clear himself. Petitioner then stated that he and Ms. Cross did have sex that morning when they woke up. Id. at 274.

Petitioner's brother Charles Hamilton testified that he lived next door to petitioner and was outside on the morning of March 29, 2002, when petitioner exited his apartment with Ms. Cross. Mr. Hamilton stated that the two spoke for a moment before Ms. Cross left and walked down the street. She was not crying and did not seem agitated. Id. at 293-94.

Petitioner testified at trial that Ms. Cross called him multiple times the evening of March 29, 2002. Id. at 303-04. He picked her up around 11:45 p.m. and drove with her back to his apartment. When they got inside, Ms. Cross told him she wanted to smoke crack and asked him to get a pipe from his brother. Petitioner called his brother, who provided a pipe. Ms. Cross smoked crack and got into petitioner's bed to go to sleep. Id. at 306. He testified that, after thirty minutes or so, Ms. Cross

asked him whether he had any medication that would help her relax. He gave her a muscle relaxer and she went to sleep. He lay down next to her on top of the covers and slept. At around 3:15 in the morning she woke him up and they had intercourse and went back to sleep. Id. at 307-09. In the morning, Ms. Cross asked him for $20, but he refused, stating that he had previously given her $25. Petitioner testified that she didn't seem upset by his refusal. According to petitioner, he left the apartment with Ms. Cross about 10:45 a.m. He told her that she could not come to the apartment again because his girlfriend might be there. Id. at 312-14. He testified that Ms. Cross was not locked in the apartment and that she had access to more than one telephone while there. He denied hitting, choking and raping Ms. Cross.

Additional facts will be included as necessary to address the merits of petitioner's claims for relief.

### III.  Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141

(2005).  "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)).  "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief."  Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 406.  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV.  **Discussion**

**Ground 1: Trial Court Error in Allowing Improper Argument**

Petitioner contends that the trial court erred in allowing the prosecutor to make improper statements during closing argument.

On direct examination, Ms. Cross testified that during the assault she "just prayed . . . and looked at the chips on the wall.  And I'm like imagining I was a clock number.  Two o'clock.  Two o'clock.  Just to take away what was being done to me."  Tr. at 203.  During closing argument, the prosecutor stated, "Imagine, laying [sic] there, one o'clock, two o'clock, three o'clock.  Begging to God that it be over.  Begging

to God that it stop." Id. at 352.  The prosecutor also stated, "Look at the size of that man.  You think you're getting by him if he doesn't want you to?"  Id. at 356.  Finally, the prosecutor stated,  "It may seem that's easy for me to stand up here and talk about it but I wasn't the one being raped on that bed that night.  Imagine coming in and saying that to twelve strangers."  Id. at 369.  Petitioner complains that the comments improperly personalized the evidence for the jurors and that the prosecutor intended to inflame the jurors' passions and arouse their fears for their own safety.  The Missouri Court of Appeals denied this claim on plain error review, concluding that the prosecutor's statements were not inflammatory or graphically detailed and did not improperly suggest that the jurors were in personal danger.  Resp. Ex. E.

Habeas relief for prosecutorial misconduct is "only appropriate if a prosecutor's improper closing argument 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Cole v. Roper, 623 F.3d 1183, 1194 (8th Cir. 2010) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  The comments petitioner complains of here do not rise to the level required to establish a denial of due process.  Id. (noting that petitioner was denied relief in Darden where prosecutor insinuated that if not given the death penalty, he might be allowed out on work release to kill again, referred to him as an animal who should be on a leash, and stated that the petitioner's face should have been "blown off").  Petitioner's first claim for relief will be denied.

### Ground 2: Improper Cross-Examination

Petitioner contends that the trial court erred in failing to intervene when the prosecutor asked him whether he believed that Ms. Cross and Detective Kennedy were liars and conspiring against him.

During cross-examination, petitioner denied signing the waiver of his <u>Miranda</u> rights or making any of the statements Detective Kennedy attributed to him.  Tr. at 328-29.  He also denied that he committed any of the acts Ms. Cross described in her testimony.  <u>Id.</u> at 334-35.  The following exchange then occurred:

> Q [prosecutor]: So Detective Kennedy is a liar and Vickey Cross is a liar. Why are all these people conspiring to make things up about you?
>
> A [petitioner]: Did you ask them?
>
> Q: I'm asking you, sir.
>
> A: I don't know.
>
> * * *
>
> Q: So Vickey Cross is just making this blind accusation in Court years later . . . and you have no idea why?
>
> A: Maybe because I told her I'll have to call her; she couldn't call me no more.  She couldn't come there no more.
>
> Q: Okay.  So Vickey Cross went through sobbing, an interview with a detective, a rape kit at a hospital and testimony on the stand because she wanted to call you?
>
> A: Maybe she wanted to be with me.
>
> Q: Yeah.  I can see why.  No further questions, Your Honor.

<u>Id.</u> at 337-38.

Petitioner argues that the prosecutor improperly asked him to judge the credibility of other witnesses.  The Missouri Court of Appeals reviewed this claim for plain error.  The court noted that "[w]itnesses should not give their opinions upon the truth of a statement by another witness, though they may do the same thing in effect by denying the fact stated."  Resp. Ex. E at *8 (citing <u>State v. Savory</u>, 893 S.W.2d 408, 410 (Mo. Ct. App. 1995).  It is permissible, however, for a prosecutor "to pit the

testimony of the State's witnesses against that of the defendant by way of relative comparison, as to which one is telling the truth." Id. (quoting Savory, 893 S.W.2d at 410). The Court of Appeals concluded that, "[e]ssentially, that is what the prosecutor was doing in the instant case." Id.

It is not clearly established that asking a defendant to comment on the credibility of another witness amounts to a violation of constitutional law that would entitle a petitioner to habeas corpus relief. See United States v. Martin, 454 F. Supp. 2d 278, 286 (E.D. Pa. 2006) ("Courts are split on whether or not such questions are proper"). And, to the extent that petitioner alleges that the prosecutor violated a principle of Missouri law, such a claim is not cognizable in habeas corpus. Petitioner's second claim for relief will be denied.

### Grounds 3-5: Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, –––U.S. –––, 131 S. Ct. 1388, 1410 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Harrington v. Richter, ––– U.S. –––, 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786.

Id. at 831-32.

Petitioner first asserts that trial counsel rendered constitutionally ineffective assistance of counsel when he failed to call three witnesses to testify that Ms. Cross prostituted herself in exchange for drugs. The Missouri Court of Appeals found that this claim was refuted by the record. Resp. Ex. J. Defense counsel attempted to introduce evidence that Ms. Cross engaged in prostitution, but the trial court ruled that such evidence was inadmissible under Missouri's rape shield law, Mo.Rev.Stat, § 491.015. Tr. at 218-220. The trial court also precluded Charles Hamilton from testifying that Ms. Cross attempted to buy crack cocaine from him on several occasions. Id. at 232-33. Petitioner cannot establish that counsel's performance was deficient for failing to introduce evidence that the trial court ruled was inadmissible. Furthermore, the jury heard petitioner's contention that Ms. Cross exchanged sex for drugs when Detective Kennedy testified. Petitioner cannot establish that he was prejudiced by counsel's alleged failure to introduce similar evidence.

Petitioner next claims that trial counsel was ineffective for failing to call Gwendolyn Jones-Redmond who would have testified that Ms. Cross called her in an attempt to reach petitioner after the rape.  Petitioner further claims that cell phone records would have corroborated this testimony.  This, he asserts, would have supported his defense that the sexual contact was consensual.  However, Ms. Cross testified at trial that Ms. Jones-Redmond had contacted her and offered her money to stop petitioner's prosecution.  Tr. at 229.  The post-conviction court concluded that evidence of phone calls could be attributed to this attempt.  Resp. Ex. G at 65-66.  The Missouri Court of Appeals agreed and further found that Ms. Jones-Redmond's proposed testimony would only marginally impeach Ms. Cross and that trial counsel was not ineffective for failing to call Ms. Jones-Redmond or introduce her cellphone records.  Petitioner has failed to show that the state courts' decision was contrary to or an unreasonable application of  clearly established law or an unreasonable determination of the facts in light of the evidence.

In his final claim, petitioner contends that trial counsel was ineffective in failing to file a motion to suppress his statements to Detective Kennedy.  As stated above, petitioner testified that he did not sign the waiver of his rights and he denied making the statements Detective Kennedy attributed to him.  In denying petitioner's claim that defense counsel should have filed a motion to suppress his statements, the post-conviction motion court found that Detective Kennedy's testimony was credible and that a motion to suppress would not have succeeded.  The court's credibility determination is a finding of fact entitled to a presumption of correctness unless refuted by clear and convincing evidence.  § 2254(e)(1); Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) ("The deference owed to the state trial court pursuant to §

2254(e)(1) includes deference to its credibility determinations."). Petitioner cannot overcome the presumption of correctness, and thus cannot show that he was prejudiced by counsel's failure to file a suppression motion. Petitioner's final claim for relief will be denied.

### V. Conclusion

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

Judgment denying the petition will be entered separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of October, 2013.